# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**JASON SCOTT MORRIS,**

     **Plaintiff,**

**v.**                              **Case No. 3:17-cv-01148**

**WESTERN REGIONAL JAIL;**
**JIM RUBENSTEIN, Commissioner;**
**and JANET PETTEY, Division of**
**Corrections Movement Coordinator,**

     **Defendants.**


### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Plaintiff Jason Scott Morris's ("Morris") *pro se* complaint filed pursuant to 42 U.S.C. § 1983 and Defendants' motions to dismiss. (ECF Nos. 2, 10, 13).[1] This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

Having thoroughly reviewed Morris's allegations, the undersigned **FINDS** that his request for injunctive relief is moot; his claims for monetary damages against the Western Regional Jail and the defendants in their official capacities are barred by the Eleventh Amendment to the United States Constitution (the "Eleventh Amendment") and are not

---

[1] Morris filed a second § 1983 complaint concerning the same subject matter in *Morris v. Rubenstein*, et al., 3:17-cv-01370 (S.D.W. Va. February 23, 2017), which was consolidated with this case. The recommendations in this PF&R apply to both civil actions.

cognizable because the Jail is not a "person" under § 1983; and his remaining claims against the defendants in their personal capacities fail to state a claim upon which relief may be granted. Therefore, the undersigned **RECOMMENDS** that the presiding District Judge **GRANT** Defendants' motions to dismiss, (ECF Nos. 10, 13), and **DISMISS** Morris's complaints, with prejudice, (ECF No. 2).

## I.    Relevant Facts

Morris alleges that he was subjected to unsanitary conditions at the Western Regional Jail in Barboursville, West Virginia (the "Jail"). (ECF No. 2 at 4); *Morris*, 3:17-cv-01370, (ECF No. 2 at 4). Specifically, he contends that he was forced to reuse a disposable spoon more than one hundred times and drink from an empty bottle that he found in the trash without the ability to sanitize either item. He further asserts that he had to live with a roommate in a cell designed for one person. (*Id.* at 4, 8). He states that the dining conditions put him "at risk of catching diseases" and that he was "constantly sick" and was "sure" that it is because he was being "poisoned from using a dirty spoon and a drinking container from the trash with no way to clean or sanitize either one." (*Id.* at 4, 9). Morris alleges that he brought the issues to the attention of the individual defendants named in this action, Jim Rubenstein and Janet Pettey, the Commissioner and Movement Coordinator for the Division of Corrections ("Rubenstein and Pettey"), respectively, and they did not remedy the problem. (*Id.* at 4). He seeks monetary compensation for enduring "cruel and unusual punishment" and being placed at risk of catching a disease. He also requests transfer from the Jail to a State Division of Corrections facility. (*Id.* at 5).

Defendants filed motions to dismiss Morris's complaints and memoranda in support. (ECF Nos. 10 through 14). The Jail argues that it should be dismissed from this

action because it is not a "person" for purposes of § 1983 and, thus, is not amenable to suit. (ECF No. 11 at 3). Further, the Jail argues that Morris's allegations do not rise to the level of cruel and unusual punishment under the Eighth Amendment to the United States Constitution (the "Eighth Amendment"). (*Id.* at 5-8). Finally, the Jail states that Morris's complaints must be dismissed because he failed to exhaust his administrative remedies. (*Id.* at 8-11).

In their motion to dismiss, Defendants Rubenstein and Pettey argue that Morris's claims against them in their official capacities are barred by the Eleventh Amendment. (ECF Nos. 13 at 1, 14 at 3-6). They likewise argue that Morris fails to state a claim under § 1983 and failed to exhaust his administrative remedies before filing this civil action. (*Id.* at 6-10).

The undersigned advised Morris of his right to respond to the motions to dismiss and provided him an extended deadline of June 16, 2017 to file a responsive brief. (ECF No. 25). He did not file a response. Therefore, the motions are ready for disposition.

## II.   <u>Motion to Dismiss Standard</u>

A motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6) tests the legal and factual sufficiency of a complaint. *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). In ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus,* 551 U.S. 89 (2007). The complaint must assert facts that are sufficient to "raise a right to relief above the speculative level" and support a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *See also Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009). The Supreme Court explained the "plausibility" standard in *Ashcroft v. Iqbal*, stating:

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal,* 1937 S. Ct. at 1949 (quoting *Twombly,* 550 U.S. at 1955) (internal citations omitted). Determining whether a complaint states a facially plausible claim for relief is a "context-specific task that requires the court to draw on its judicial experience and common sense." *Iqbal,* 1937 S. Ct. at 1950 (citing *Iqbal v. Hasty,* 490 F.3d 143, 157–158 (2nd Cir. 2007)). While the court is required to accept as true the factual allegations asserted in the complaint, it is not required to accept the legitimacy of legal conclusions. *Iqbal,* 1937 S. Ct. at 1949. As such, to survive a motion to dismiss, a complaint must plead both a factual and legal basis for relief. *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to establish a facially plausible complaint).

This Court is required to liberally construe *pro se* complaints, such as the one filed in this civil action. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. The Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.    Discussion

### A. *Exhaustion of Administrative Remedies*

Defendants contend that it is clear on the face of Morris's complaints that he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PRLA"). (ECF Nos. 11 at 8-11, 14 at 9-10). Specifically, Morris states in his complaints that he submitted a grievance concerning the facts raised in the complaints on the kiosk at the Jail, but the grievance was "ignored." (ECF No. 2 at 3); *Morris*, No. 3:17-cv-01370, (ECF No. 2 at 3).

The PLRA requires inmates to exhaust administrative remedies prior to filing a complaint in federal court. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see, also, Porter v. Nussle,* 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. All available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.") (citations and internal quotation marks omitted)). However, administrative exhaustion is "not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner." *Hart v. Roderick,* No. CV GLR-15-2054, 2016 WL 3940219, at *3 (D. Md. July 21, 2016) (citations omitted). Instead, exhaustion is an affirmative defense, and the defendant bears the burden of proving that a prisoner failed to exhaust administrative remedies. *Id.*

Regarding Morris's allegation that his administrative grievance was ignored, the Supreme Court of the United States has repeatedly held that courts may not read futility or other exceptions into the PLRA that are not part of its textual mandate. *Ross v. Blake,* 136 S. Ct. 1850, 1857 (2016) (holding that "[m]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.") Nevertheless, the Supreme Court pointed out that the PLRA does contain one explicit exception; an inmate need not exhaust "unavailable" remedies. *Id.* at 1858. The Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide relief to aggrieved inmates." *Id.* Second, an administrative process is likewise unavailable when it is "so opaque" that "no ordinary prisoner can discern or navigate it." *Id.* Finally, an inmate need not exhaust administrative remedies when prison officials thwart the inmate's access to the grievance procedure "through machination, misrepresentation, or intimidation." *Id.* at 1860. "[S]uch interference with an inmate's pursuit of relief renders the administrative process unavailable." *Id.*

It is not apparent from the face of Morris's complaints, particularly when construed in the light most favorable to him, whether Morris failed to exhaust his administrative remedies or whether he exhausted all administrative remedies *available to him*. At this stage in the litigation, neither party provided additional information to explain or supplement Morris's bare statement in his complaint that he filed a grievance, which was ignored. Based on the limited record before the Court, it would be premature to dismiss Morris's complaint for failure to exhaust administrative remedies. *See Custis*,

851 F.3d 358, 361–62 (4th Cir. 2017) (discussing that it is a rare, exceptional instance where administrative exhaustion is apparent on the complaint's face and noting that the inmate's statement that he attempted to exhaust his administrative remedies "may equally imply that he attempted, but could not, exhaust his administrative remedies—and thus, that he exhausted all remedies that were available to him."); *White v. Van Duncan*, No. 1:10-cv-014, 2010 WL 2813492, at *2 (W.D.N.C. July 15, 2010) (finding that, based on the limited record and viewing the allegations in the light most favorable to the plaintiff, the plaintiff attempted to utilize the administrative grievance procedure and his grievances were ignored and it would be improper to dismiss the complaint for failure to exhaust, as the issue could be raised later in a motion for summary judgment).

In any event, for the reasons discussed below, further inquiry into the issue of exhaustion is unnecessary because Morris's complaints must be dismissed based upon other factors, including his failure to state a claim upon which relief can be granted. *See, e.g., Burress v. Perkins*, No. 2:13-CV-01970, 2014 WL 12538965, at *14 (S.D.W. Va. Feb. 28, 2014), *report and recommendation adopted by* 2014 WL 12543919 (S.D.W. Va. Mar. 20, 2014), *aff'd*, 579 F. App'x 217 (4th Cir. 2014) (stating that the Court need not address exhaustion because the plaintiff fails to state a claim upon which relief can be granted).

### B. Claims for Injunctive Relief

The undersigned next addresses Morris's request for injunctive relief in which he seeks a transfer from the Jail to a State Division of Corrections facility. As a prerequisite to the exercise of judicial authority, the complaint before the court must present an actual case or justiciable controversy. "To be justiciable under Article III of the Constitution, the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed and at the time it is decided. If intervening factual ... events effectively

dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." *Ross v. Reed*, 719 F.2d. 689, 693-94 (4th Cir. 1983). "The requisite personal interest that must exist at the commencement of the litigation ... must continue throughout its existence. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 22 (1997) (citations omitted). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969).

"[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009). "The reasons for finding mootness in such a context are clear. Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir. 2007). "Any declaratory or injunctive relief ordered in the inmate's favor in such situations would have no practical impact on the inmate's rights and would not redress in any way the injury he originally asserted." *Id.*

Nevertheless, a plaintiff's claim should not be dismissed as moot if there is sufficient evidence to conclude that the action is "capable of repetition, yet evading review." *Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911). Except in the context of a class action, the "capable of repetition, yet evading review" doctrine is applicable only where two elements combine: (1) the challenged action was "in its duration too short to be fully litigated prior to its cessation or expiration," and (2) there is "a reasonable expectation that the same complaining party would be subjected to the

same action again." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998).

The burden on a prisoner to establish post-transfer viability of such a claim is heavy. The prisoner must make a reasonable showing "that he will again be subject to the alleged illegality." *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 109 (1983)). In *Higgason*, an inmate alleged that his claim for injunctive relief made pursuant to a § 1983 claim should not be dismissed as moot, even though he was no longer at the offending facility, because his return to that facility was a "virtual certainty." *Id.* The court rejected this contention as a ground for applying the exception, stating, "[s]uch an allegation does not amount to a 'showing' or a 'demonstration' of the likelihood of retransfer." *Id.* Accordingly, mere conjecture that a plaintiff may return to a prison facility and again face the alleged wrong is not sufficient to meet the mootness exception. *Id.*

Morris is no longer incarcerated in the Jail; rather, he is currently incarcerated in Parkersburg Correctional Center in Parkersburg, West Virginia, which incidentally fulfills his request for transfer to a state prison. *See* Offender ID (OID) Number: 3536619, West Virginia Division of Corrections Inmate Locator, https://apps.wv.gov/OIS/OffenderSearch/DOC/Offender (last visited Aug. 10, 2017). Morris makes no allegation that he will return to the Jail and be subjected to the same alleged wrongs. Therefore, the undersigned **FINDS** that (1) Morris's departure from the Jail renders his request for prospective injunctive relief moot and (2) the circumstances do not support a conclusion that Morris's claims for non-monetary relief fall within the "capable of repetition, but evading review" exception to the mootness doctrine.

### C.  Claims for Monetary Damages

Title 42 U.S.C. § 1983 provides a remedy to parties who are deprived of federally

protected civil and constitutional rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." *Id.* Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape,* 365 U.S. 167, 171-172 (1961), *overruled on other grounds by Monell v. Dept. of Soc. Servs.,* 436 U.S. 658 (1978).

In order to state a cause of action under § 1983, a plaintiff must present facts showing that: (1) a person deprived him or her of a federally protected civil right, privilege or immunity and (2) that the person did so under color of State law. *Perrin v. Nicholson*, C/A No. 9:10-1111-HFF-BM, 2010 WL 3893792, at *2 (D.S.C. Sept. 8, 2010); *See American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) ("To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."). If either of these elements is missing, the complaint fails to state a claim for relief under § 1983. *Id.* at 50.

### 1. *Claims against the Jail*

In *Will v. Mich. Dept. of State Police,* the United States Supreme Court considered "the question whether a State, or an official of the State while acting in his or her official capacity, is a 'person' within the meaning of ... § 1983." *Id.*, 491 U.S. 58, 60 (1989). Examining the language and purpose of the statue, the Supreme Court ultimately concluded that Congress did not intend to subject States to liability for deprivations of civil liberties, when such suits would have been barred by the States' sovereign immunity. *Id.* at 66. The holding in *Will* applied not only to lawsuits against the State, itself, but also to suits against "public entities and political subdivisions" that were an "arm or alter ego"

of the State. *Maryland Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) (quoting *Moor v. Alameda County,* 411 U.S. 693, 717 (1973)).

Consequently, the Court must consider whether the Jail is an arm or alter ego of the State of West Virginia. If the Jail is an arm or alter ego of the State, then Morris cannot maintain a federal civil rights complaint against it under § 1983, because that statute only authorizes suit against a "person." "In determining if a public entity is an alter ego of the state ... courts have generally looked to the standards announced in cases addressing whether governmental entities are entitled to Eleventh Amendment immunity as an arm of the state. *Id.* In this case, the query is easy as the law is well settled that the Jail is an arm of the State of West Virginia. *See Hall v. Pszczolkowski*, No. 5:14CV150, 2015 WL 6742107, at *3 (N.D.W. Va. Nov. 4, 2015) (holding that "state detention facilities are 'arms of the state'") (citing *Preval v. Reno*, 203 F.3d 821 (Table), No. 99-6950, 2000 WL 20591, *1 (4th Cir. Jan. 13, 2000) (unpublished per curiam)); *see, also, Kinder v. PrimeCare Med., Inc.,* No. 3:13–31596, 2015 WL 1276748, at *2 (S.D.W. Va. Mar. 19, 2015) (dismissing the WRJ from § 1983 suit on Eleventh Amendment grounds); *Skaggs v. W. Reg'l Jail,* No. 3:13–3293, 2014 WL 66645, at *1, *4 (S.D.W. Va. Jan. 8, 2014) (dismissing the WRJ from § 1983 suit and adopting finding that the WRJ is arm of the State for Eleventh Amendment purposes).

Therefore, the undersigned **FINDS** that the Jail, as an arm of the State, is not a "person" subject to suit under § 1983. *See Roach v. Burch,* 825 F.Supp. 116 (N.D.W. Va. 1993); *also*, *Will,* 491 U.S. at 60; *Cantley v. Western Regional Jail and Correctional Facility Authority,* 728 F.Supp.2d 803 (S.D.W. Va. 2010) (finding that the West Virginia Regional Jail Authority and Correctional Facility is not a "person" for purposes of a claim for money damages under § 1983.); *Lewis v. Western Reg'l Jail,* No. 3:11–cv–01016, 2012

WL 3670393, at *5 (S.D.W. Va. July 24, 2012) (recognizing that "the WRJ is not a person subject to suit under § 1983"), *report and recommendation adopted by* 2012 WL 3726874 (S.D.W. Va. Aug. 27, 2012); *and Dement v. Summers Cnty. Courthouse,* No. 5:13–cv– 08899, 2015 WL 461560, at *3 (S.D.W. Va. Feb. 3, 2015) (finding that Southern Regional Jail was not subject to § 1983 suit). Therefore, the undersigned **FINDS** that Morris's complaint against the Jail should be dismissed because it is not a person amenable to suit under § 1983.

Although not specifically raised by the Jail, the undersigned also **FINDS** that the Jail is entitled to immunity under the Eleventh Amendment.[2] The Eleventh Amendment provides, in relevant part, that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although the Eleventh Amendment refers only to suits by citizens of other states, the United States Supreme Court has construed the Amendment to "establish that an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another state." *Port. Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (2009) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)) (markings omitted). The immunity created by the Amendment protects both the State, itself, and its agencies, divisions, departments, officials, and other "arms of the State." *Taylor v. Ozmint*, Case No. 0:10–50–HMH–PJG, 2011 WL 286133, at *2 (D.S.C.

---

[2] The Court may *sua sponte* raise the issue of sovereign immunity. *See Regueno v. Erwin*, No. 2:13-CV-00815, 2013 WL 1837881, at *2 (S.D.W. Va. May 1, 2013) (holding that "[a]lthough [the Jail] did not raise an Eleventh Amendment immunity defense in its motion, 'because of its jurisdictional nature, a court ought to consider the issue of Eleventh Amendment immunity at any time, even *sua sponte.*") (quoting *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 227 (4th Cir. 1997)).

Jan. 7, 2011) (citing *Will* 491 U.S. at 70); *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities.").

Three narrow exceptions to Eleventh Amendment immunity exist. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248-49 (4th Cir.2012). First, the State may waive its right to immunity and consent to suit. *Lapides v. Bd. of Regents Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002). Such a waiver must be express, or in other words, the waiver must be an "unequivocal statement of the state's intention to subject itself to suit in federal court." *See Regueno*, 2013 WL 1837881, at *3 (quoting *Westinghouse Elec. Corp. v. W. Va. Dept. of Highways*, 845 F.2d 468, 471 (4th Cir. 1988)) (markings omitted); *and Price v. W. Virginia Air Nat'l Guard, 130TH Airlift Wing*, No. 2:15-CV-11002, 2016 WL 3094010, at *2–3 (S.D.W. Va. June 1, 2016) (holding that insurance provisions contained in the West Virginia Code provide a limited waiver of the State's sovereign immunity in state courts; however, that waiver does not extend to suits brought against the State in federal court). Historically, the State of West Virginia has not waived its sovereign immunity in this type of suit, and there is no indication that the State would do so now. *See Kinder*, 2015 WL 1276748, at *7; *Skaggs*, 2014 WL 66645, at *5; *Chafin v. W. Reg'l Jail*, No. 3:13-cv-01706, 2013 WL 3716673, at *4 (S.D.W. Va. July 12, 2013); *Thompson v. W. Va. Reg'l Jail/Corr. Auth.*, No. 3:13-1897, 2013 WL 3282931, at *4 (S.D.W. Va. June 27, 2013); *Meadows v. Huttonsville Corr. Ctr.*, 793 F. Supp. 684, 686 (N.D.W. Va. 1992). Consequently, the waiver exception does not apply here.

Second, "Congress may abrogate the States' Eleventh Amendment immunity when

it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73). In *Will*, the Supreme Court concluded that Congress did not have the States in mind as potential defendants when it imposed liability on "persons" under § 1983. 491 U.S. at 65. Noting that ordinary rules of statutory construction required Congress to make any alteration of the "usual constitutional balance between the States and the Federal Government … unmistakably clear in the language of the statute," the Supreme Court observed that had Congress intended to include States as "persons" for the purposes of § 1983, it would have explicitly done so. *Id.* at 65 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985)). Two years later, the Supreme Court reaffirmed its holding in *Will* and explained that "interpreting the words '[e]very person' to exclude the States accorded with the most natural reading of the law, with its legislative history, and with the rule that Congress must clearly state its intention to alter 'the federal balance' when it seeks to do so." *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (quoting *Will*, 491 U.S. at 65). Thus, Congress has not abrogated Eleventh Amendment sovereign immunity in the context of a § 1983 action. *See Quern v. Jordan*, 440 U.S. 332, 340 (1979).

As to the third and final exception, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex Parte Young*, 209 U.S. 123, (1908)); *see also Freeland v. Ballard*, 6 F. Supp. 3d 683, 694 (S.D.W. Va. 2014) ("Pursuant to the Eleventh Amendment, a federal court may enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds."). "The *Ex Parte Young* exception is directed at

'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings'" to enforce an unconstitutional act against affected parties. *McBurney v. Cuccinelli, II*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex Parte Young*, 209 U.S. at 155-56). The state officer being sued must have "proximity to and responsibility for the challenged state action" before the exception can be invoked. *Id.* Moreover, the exception "applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citations omitted). Because the Jail is not a state officer, but rather a state entity or agency, the third exception to Eleventh Amendment immunity is likewise inapplicable. *Lee-Thomas*, 666 F.3d at 249 (recognizing that lawsuit must name state official as defendant, not state agency); *Chafin*, 2013 WL 3716673, at *5 (recognizing same); *see also Thomas v. Nakatani*, 309 F.3d 1203, 1208 (9th Cir. 2002) ("*Ex Parte Young* doctrine creates a fiction by allowing a person to enjoin future state action by suing a state official for prospective injunctive relief rather than the state itself. Even so, the Supreme Court has emphasized the importance of respecting this fiction").

In sum, since none of the exceptions apply, the undersigned **FINDS** that the Jail is shielded by the Eleventh Amendment's sovereign immunity from Morris's § 1983 claims and should be dismissed on that ground, as well.

### 2. *Official Capacity Claims*

As to Morris's remaining claims against Defendants Rubenstein and Pettey, the undersigned next considers the defendants' argument that they are immune from suit under the Eleventh Amendment. As discussed above, in *Will,* the Supreme Court of the

United States considered "the question whether a State, or an official of the State while acting in his or her official capacity, is a 'person' within the meaning of Rev. Stat. § 1979, 42 U.S.C. § 1983." *Will*, 491 U.S. at 60. Examining the language and purpose of the statute, the Supreme Court concluded that Congress never intended to subject States to liability for deprivations of civil liberties when such suits would have otherwise been barred by the States' sovereign immunity. *Id.* at 66. The Court further held that a State's officials "acting in their official capacities" were not "persons" under § 1983, explaining: "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official; rather, it is a suit against the official's office. As such, it is no different from a suit against the State itself." *Id* at 71. (citations omitted).

The Court later clarified its holding in *Will,* making a distinction between officials acting in their official capacities and officials acting in their personal capacities under color of state law. *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985); *see also Hafer v. Melo,* 502 U.S. 21 (1991). The Court indicated that because the real party in interest in an "official-capacity" suit is the governmental entity, rather than the named official, the target of such a claim is the entity's "policy or custom." *Hafer,* 502 U.S. at 25 (citing *Graham,* 473 U.S. at 166). "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.*

The significance of this distinction is key to the viability of a § 1983 complaint against a state official. As a general proposition, the doctrine of sovereign immunity bars suit against a State. *Will,* 491 U.S. at 67. By extension, sovereign immunity precludes claims for money damages against state officials acting in their official capacities, including claims brought pursuant to § 1983. *Id.* at 71. In contrast, a suit for money

damages brought against a state official, who acted in his personal capacity under color of state law, is not barred by the doctrine of sovereign immunity. *Hafer,* 502 U.S. at 30. Instead, a state official sued in his personal capacity under § 1983 must rely upon "personal immunities," such as qualified immunity, to bar suit. *Id.* at 31.

The determination of whether a defendant has been named in his official or personal capacity is generally made by examining "the face of the complaint." *Amos v. Maryland Dep't of Pub. Safety & Corr. Servs.,* 126 F.3d 589, 609 (4th Cir. 1997), *vacated on other grounds by* 524 U.S. 935 (1998). "[A] plaintiff need not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983." *Biggs v. Meadows,* 66 F.3d 56, 60 (4th Cir. 1995). However, "[w]hen a plaintiff does not allege capacity explictly, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Id.* at 61. In *Foreman v. Griffith*, the Fourth Circuit discussed the significance of the factors outlined in *Biggs*:

> With respect to assessing the nature of a plaintiff's claim or claims, the *Biggs* court stated that the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom or the lack of indicia of such a policy or custom on the face of the complaint indicates that a state actor has been sued in his individual capacity. With respect to the nature of the relief sought, the *Biggs* court also stated that the plaintiff's request for compensatory or punitive damages indicates an individual capacity suit since such relief is unavailable in official capacity suits. Finally, with respect to the course of proceedings, the *Biggs* court stated that the defendant's assertion of qualified immunity as a defense indicates an individual capacity suit, since such a defense is only available in individual capacity suits.

81 F. App'x 432, 435 (4th Cir. 2003). Ultimately, "the underlying inquiry remains whether the [p]laintiff's intention to hold a defendant personally liable can be ascertained fairly." *Biggs*, 66 F.3d at 61.

Morris does not specify whether he intends to sue Rubenstein and Pettey in their official or personal capacities. *Morris*, No. 3:17-cv-01370 (ECF No. 2). Accordingly, the undersigned reviews Morris's complaints to make a fair determination. Morris alleges that he wrote to the defendants regarding the conditions in the Jail and they failed to correct the problem. *Id.* at 4. Morris asserts specific allegations against Rubenstein and Pettey; however, he also refers to them as the "Division of Corrections" in his complaint. (*Id.* at 4, 8). In terms of relief, he requests compensation for his "suffering and mental anguish" and asks to be "moved to a state penal institution." (*Id.* at 5).

Given all of the above, considering the fact that Morris asserts specific claims against the defendants and requests both injunctive and monetary relief, it appears that he sued Rubenstein and Pettey in both their official and personal capacities. Thus, to the extent that Morris seeks money damages from the defendants for acts done in their official capacities, the undersigned **FINDS** that such prison officials are not "persons" liable for money damages under § 1983 and Morris's monetary claims against Rubenstein and Pettey in their official capacities should be dismissed.

### 3. *Personal Capacity Claims*

The undersigned next examines Morris's claims against the defendants in their personal capacities.

### i. *Eating Utensil and Cup*

Morris states that during his incarceration in the Jail, he was forced to use the same disposable spoon over 100 times during meals and he had to use an empty bottle that he recovered from the trash to drink the juice provided to him because he was not given a cup; he contends that he could not clean or sanitize either item. (ECF No. 2 at 4). He does not identify a specific physical injury that he suffered, but instead speculates that the

"unsanitary conditions" put him "at risk of catching diseases" and that he was "constantly sick" and was "sure" that it was because he was "poisoned" by the unsanitary spoon and cup. (*Id.* at 4, 9). He also states in his second § 1983 complaint that he suffered mental anguish as a result of the conditions in the Jail. *Morris*, No. 3:17-cv-01370, ECF No. 2 at 5, 9).

In order for Morris to state a plausible claim for cruel and unusual punishment under the Eighth Amendment, he must show both (1) "a deprivation suffered or injury inflicted" that was "sufficiently serious," when measured by an objective standard (objective component), and (2) that the responsible prison officials had a "sufficiently culpable state of mind" (subjective component). *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (*quoting Wilson*, 501 at 298-300). The objective component of an Eighth Amendment claim is satisfied by a showing that the challenged conditions caused or constituted an extreme deprivation of a basic human need. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). "[T]o demonstrate such an extreme deprivation, [Plaintiffs] must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [their] exposure to the challenged conditions." *Odom v. South Carolina Dept. of Corrections*, 349 F.3d 765, 770 (4th Cir. 2003) (*quoting De'Lonta*, 330 F.3d at 634); *see also Stickler,* 989 F.2d at 1380 ("[F]or prison conditions to rise to the level of unconstitutional punishment, there must be evidence of a serious medical and emotional deterioration attributable to the challenged condition."). "Compelling a showing of significant physical or emotional harm, or a grave risk of such harm, infuses an element of objectivity into the analysis, lest resolution of the seriousness of the deprivation devolve into an application of the subjective views of the judges deciding the question." *Shakka v.*

*Smith,* 71 F.3d 162, 166 (4th Cir. 1995) (citing *Strickler,* 989 F.2d 1375, 1379–80 (4th Cir. 1993)).

To fulfill the subjective component, Morris must demonstrate that the defendants were deliberately indifferent to his health or safety. *Farmer,* 511 U.S. at 834 *quoting Wilson,* 501 U.S. at 297). The Supreme Court of the United States has explained:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer,* 511 U.S. at 837. Deliberate indifference is more than mere negligence but less than malice. *Estelle v. Gamble,* 429 U.S. 97, 105-06 (1976). In other words, if the defendants here were aware of an excessive risk of harm to Morris's health or safety and disregarded it, they had a sufficiently culpable state of mind. *See Wilson,* 501 U.S. at 303; *Brown v. North Carolina Dept. of Corrections,* 612 F.3d 720, 723 (4th Cir. 2010).

Morris's allegations that he had to reuse a spoon and drink from a discarded drinking container that he recovered from the trash without the ability to properly sanitize either item did not objectively deny Morris "the minimal civilized measure of life's necessities" or violate contemporary notions of decency. *Fletcher v. Ponton,* No. 2:09CV251, 2009 WL 7215789, at *1 (E.D. Va. June 3, 2009), *aff'd,* 333 F. App'x 711 (4th Cir. 2009) (citing Wilson, 501 U.S. at 298 and *Rhodes v. Chapman,* 452 U.S. 337 (1981) (stating that although the conditions may be restrictive and even harsh, they are part of the penalty that criminal defendants must pay for their offenses against society); *Willis v. Clark,* No. 3:12-CV-03452, 2012 WL 5397115, at *6 (S.D.W. Va. Oct. 9, 2012), *report and recommendation adopted by* 2012 WL 5397113 (S.D.W. Va. Nov. 5, 2012) (discussing that

the failure to provide silverware or short-term deprivation of hand soap does not constitute cruel and unusual punishment under the Eighth Amendment) (collecting cases); *Clary v. Corley*, No. CIV. CCB-12-1874, 2012 WL 5986450, at *3 (D. Md. Nov. 28, 2012) (finding that the plaintiff's claim that he had to reuse his plastic spoon and cup after only being allowed to rinse them failed to state a claim under § 1983); *Prince v. Crawford*, No. 3:16-CV-02317, 2017 WL 2991350, at *18 (S.D.W. Va. May 31, 2017), *report and recommendation adopted by* 2017 WL 2991344 (S.D.W. Va. July 13, 2017) (finding that the plaintiff failed to state a claim under § 1983 based on his allegation that he did not have the opportunity to sanitize his cup and had to rely on the kindness of others to purchase a spoon for him or eat with his hands).

Only "extreme deprivations" are adequate to satisfy the objective component of an Eighth Amendment claim. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, while the practice of reusing a spoon and using a drinking receptacle from the trash without being able to sanitize the items may be distasteful to Morris, these conditions are not sufficiently serious to establish cruel and unusual punishment under the Eighth Amendment. In fact, much more objectively offensive conditions have been found to not constitute cruel and unusual punishment within the institutional setting. *See, e.g., Wassil v. Casto*, No. CIV.A. 3:13-06020, 2014 WL 988479, at *11–12 (S.D.W. Va. Mar. 12, 2014) (discussing that occasional short-lived problems with food service, including instances of spoiled food or food containing rodents, a raw chicken heart, glass, cockroaches, or maggots were found to not state a claim for cruel and unusual punishment under § 1983).

Moreover, Morris does not allege that he suffered serious medical and/or emotional deterioration attributable to using an unsanitized spoon and drinking bottle. *Wassil*, 2014 WL 988479, at *11 (citing *Strickler,* 989 F.2d at 1381). His primary concern

is that he was potentially exposed to diseases. However, this allegation fails to state a claim under the Eighth Amendment. *Alston v. Dep't of Corr.*, No. CIV.A. 7:07-CV-00575, 2007 WL 4410770, at *3 (W.D. Va. Dec. 14, 2007) (finding that the plaintiff's allegation that unsanitary food service placed him at risk of exposure to sickness or diseases was entirely speculative and not sufficiently serious to rise to the level of a constitutional violation); *Fletcher v. Ponton*, No. 2:09CV251, 2009 WL 7215789, at *2 (E.D. Va. June 3, 2009), *aff'd*, 333 F. App'x 711 (4th Cir. 2009) (finding that the plaintiff's allegation that storing his dirty laundry in his locker with food items put him at a health risk failed to demonstrate a significant injury or appreciable risk of injury in the future).

Further, Morris's conclusory allegations that he was "constantly sick" and suffered mental anguish fail to show harm of constitutional magnitude. *See Alston*, 2007 WL 4410770, at *3 (collecting cases demonstrating that even transient diarrhea, vomiting, nausea, dizziness, and breathing problems, which caused no lasting or permanent health effects, were not sufficiently serious to establish Eighth Amendment violation); *Willis*, 2012 WL 5397115, at *7 (recommending dismissal of the complaint where the plaintiff alleged exposure to mold, but "provid[ed] no facts establishing actual or substantial harm to his health or safety."); *Robinson v. Weisenburger*, No. 7:14CV00114, 2015 WL 5023745, at *7 (W.D. Va. Aug. 25, 2015) (finding that the plaintiff's allegations of stress and dental infections caused by jail conditions were not constitutionally significant injuries).

Therefore, for the reasons stated above, the undersigned **FINDS** that Morris's complaints of unsanitary dining practices fail to establish a plausible claim for cruel and unusual punishment under the Eighth Amendment.

### ii. Double-Celling

Morris also challenges the conditions at the Jail on the basis that he was housed with a roommate in a cell designed for one person. *Morris*, No. 3:17-cv-01370, ECF No. 2 at 8. "Double-celling" or "the housing of two prisoners in a cell initially designed for single occupancy" is "not itself a violation of the Constitution." *Johnson v. Levine*, 588 F.2d 1378, 1380 (4th Cir. 1978) (citing *Hite v. Leeke*, 564 F.2d 670 (4th Cir. 1977)); s*ee Rhodes,* 452 U.S. at 350; *Bell v. Wolfish,* 441 U.S. 520, 541-44 (1979). However, "when the practice of double-celling inmates is combined with other adverse conditions, double-celling may create an Eighth Amendment violation." *Goodman v. McBride*, No. CIV.A. 5:06-CV-00523, 2007 WL 1821090, at *5 (S.D.W. Va. June 22, 2007) (citations omitted). Of course, "[a]n inmate must demonstrate a serious injury or significant risk of such an injury stemming from the overcrowding and unsanitary conditions to state a claim, as a *de minimis* injury does not violate the Fourteenth or Eighth Amendments." *Robinson*, 2015 WL 5023745, at *5.

Morris does not allege any adverse conditions or significant injuries that he suffered as a result of being double-celled. Like Morris's allegations regarding the dining practices at the Jail, much more severe allegations than Morris's have not amounted to constitutional violations. *See, e.g., Gray v. V.B.C.C. Inmate Hous.*, No. 1:14CV414 TSE/TCB, 2014 WL 3420483, at *3 (E.D. Va. July 9, 2014) ("Even collectively, the asserted facts that VBCC cells are overcrowded, plaintiff may have had to sleep on the floor near the toilet at various times, can only clean his cell once a day, and is frequently placed in lockdown status do not comprise objectively serious deprivations of his basic human needs, as they do not subject plaintiff to such grave risk that contemporary notions of decency are violated."). Therefore, the undersigned **FINDS** that Morris fails to state a

claim for cruel and unusual punishment under the Eighth Amendment relating to double-celling.

### IV. Proposal and Recommendations

For the reasons stated, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the foregoing findings and **RECOMMENDS** that the presiding District Judge **GRANT** Defendants' motions to dismiss, (ECF Nos. 10, 13), and **DISMISS** Morris's complaints, with prejudice, (ECF No. 2).

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Chambers, Magistrate Judge Eifert, counsel of record, and any unrepresented party.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff and counsel of record.

**FILED:** August 22, 2017

Cheryl A. Eifert
United States Magistrate Judge